UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
BENTON DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA,                    :
                                             :
            Plaintiff,                       :
                                             :          Civil Action No. 3:25-cv-00046
      v.                                     :
                                             :
GENERAL DYNAMICS–ORDNANCE AND                :
TACTICAL SYSTEMS, INC.; CRANE                :
COMPANY, AS AGENT FOR REDCO                  :
CORPORATION; THE ENSIGN-BICKFORD             :
COMPANY; ILLINOIS TOOL WORKS INC.;           :
OLIN CORPORATION; UNITED STATES              :
SURGICAL CORPORATION;                        :
MALLINCKRODT US LLC; THE SHERWIN             :
WILLIAMS COMPANY; and                        :
MASON & HANGER CORPORATION,                  :
                                             :
            Defendants.                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**CONSENT DECREE**

TABLE OF CONTENTS

I.      BACKGROUND ................................................................................................. 1
II.     JURISDICTION ................................................................................................. 3
III.    PARTIES BOUND ............................................................................................. 3
IV.     DEFINITIONS.................................................................................................... 3
V.      PAYMENT OF RESPONSE COSTS ............................................................... 7
VI.     FAILURE TO COMPLY WITH CONSENT DECREE .................................. 11
VII.    DISPUTE RESOLUTION ................................................................................ 11
VIII.   COVENANTS BY UNITED STATES ............................................................. 12
IX.     RESERVATIONS OF RIGHTS BY UNITED STATES .................................. 13
X.      COVENANTS BY SETTLING PRIVATE PARTIES, SETTLING FEDERAL
        AGENCIES, AND IOP ERA PRIVATE PARTIES.......................................... 14
XI.     RESERVATION OF RIGHTS BY SETTLING PRIVATE PARTIES ............ 17
XII.    EFFECT OF SETTLEMENT/CONTRIBUTION .............................................. 17
XIII.   RETENTION OF RECORDS ........................................................................... 18
XIV.    NOTICES AND SUBMISSIONS .................................................................... 20
XV.     RETENTION OF JURISDICTION ................................................................... 23
XVI.    INTEGRATION/APPENDICES ....................................................................... 23
XVII.   LODGING AND OPPORTUNITY FOR PUBLIC COMMENT .................... 24
XVIII.  SIGNATORIES/SERVICE................................................................................ 24
XIX.    FINAL JUDGMENT ......................................................................................... 24

# I.    BACKGROUND

A.    The United States of America ("United States"), on behalf of (a) the Secretary of the Department of the Interior ("DOI"), acting through the United States Fish and Wildlife Service ("FWS"), and (b) the Administrator of the United States Environmental Protection Agency ("EPA"), filed a complaint in this matter pursuant to Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607, seeking from the Defendants reimbursement of response costs incurred for response actions taken at or in connection with the release or threatened release of hazardous substances at the Additional and Uncharacterized Sites Operable Unit ("AUS OU"), located within the Sangamo Electric Dump/Crab Orchard National Wildlife Refuge Site (the "Site") near Marion, Illinois. The United States and the Defendants are collectively referred to herein as the "Parties."

B.    Since 1942, portions of the Crab Orchard National Wildlife Refuge (the "Refuge") have been used by various entities, including the Parties, for among other things, manufacturing and/or storage facilities (including explosives and munitions).

C.    During and after World War II, the Sherwin Williams Defense Corporation, a predecessor to The Sherwin Williams Company, and the Silas Mason Company, a predecessor to the Mason & Hanger Corporation, operated at the Site under contract with the War Department, a predecessor to the United States Department of Defense ("DoD"). These operating contracts contain provisions allegedly requiring the United States to provide certain financial protection to The Sherwin Williams Company and the Mason & Hanger Corporation.

D.    In 1987, pursuant to CERCLA Section 105, 42 U.S.C. § 9605, EPA listed the Site on the CERCLA National Priorities List, set forth at 40 C.F.R. Part 300, Appendix B, by publication in the Federal Register, 52 Fed. Reg. 27,620, 27,631 (July 22, 1987). The Site is located entirely within the Refuge.

E.    Since 1987, seven operable units have been designated at the Site, including the AUS OU. FWS initially identified 83 locations for review during the preliminary assessment for the AUS OU. That review recommended the collection of samples at 39 locations to screen for potential contamination during the site inspection. Upon completing the preliminary assessment and site investigation ("PA/SI"), FWS determined that 32 locations at the AUS OU warranted additional study through a remedial investigation ("RI") and, if necessary, a feasibility study ("FS"). The AUS OU is comprised of 32 areas, as depicted in Appendix A.

F.    In 1991, pursuant to CERCLA Section 120, 42 U.S.C. § 9620, DOI, EPA, the Department of the Army, and the Illinois Environmental Protection Agency ("IEPA") entered into a Federal Facilities Agreement ("FFA") for the Site to, among other things, identify the nature, objective and schedule of response actions to be taken at the Site. The FFA designates DOI as the Lead Department for the AUS OU. The FFA also establishes certain consultation and dispute resolution procedures to be used by the signatories thereto. A copy of the FFA has been provided to the Settling Private Parties. Concurrent with the FFA, DOI and the Department of the Army entered into a memorandum of agreement

("MOA"). FWS has reimbursed response costs incurred by IEPA as a CERCLA support agency in accordance with cooperative agreements for IEPA to support CERCLA activities at the Site pursuant to its role under the FFA.

G.      In 2002, General Dynamics–Ordnance and Tactical Systems, Inc. ("GD-OTS"), one of the Settling Private Parties, executed an Administrative Order on Consent ("AOC") with DOI, FWS, EPA, and IEPA to perform a remedial investigation and feasibility study ("RI/FS") for the AUS OU and to reimburse certain costs. GD-OTS' reimbursement and other obligations under the AOC are unaffected by and continue unchanged by this Consent Decree.

H.      GD-OTS alleges it has incurred, as of July 31, 2023, approximately $57,047,337 in response costs consistent with the National Contingency Plan including interest in connection with completing actions pursuant to the AOC, some of which may have been reimbursed by third parties and some of which have not been reimbursed under the AOC or otherwise. GD-OTS has incurred and will continue to incur substantial response costs pursuant to the AOC.

I.      The United States alleges it has incurred substantial response costs prior to and during the investigation of the AUS OU, some of which are being reimbursed under the AOC and some of which have not been reimbursed under the AOC or otherwise.

J.      No Defendant other than GD-OTS has incurred response costs in connection with the RI/FS, the AOC, or the AUS OU.

K.      The RI/FS for the AUS OU is being prepared, releases of hazardous substances requiring remediation have been identified at certain of the 32 areas, and remedial alternatives for those releases are being evaluated.

L.      The Parties agree to participate in good faith negotiations for the performance of the remedial design and remedial action ("RD/RA") to implement the remedies selected for the AUS OU, if any, upon completion of the RI/FS.

M.      The Settling Private Parties reserve their right to challenge the RD/RA selected for the AUS OU, if any, and the United States reserves its defenses to any such challenge.

N.      The allocation of response costs among the Parties in this Consent Decree does not constitute, and is not intended to reflect, an allocation of costs associated with implementation of the RD/RA, if any, nor does it serve as precedent for allocating costs associated with the RD/RA.

O.      The Parties do not admit any liability arising out of the transactions or occurrences alleged in the Complaint.

P.      The Parties agree, and this Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith, that settlement of this matter without litigation and without the admission or adjudication of any issue of fact or

law is appropriate and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

THEREFORE, with the consent of the Parties to this Decree, it is ORDERED, ADJUDGED, AND DECREED:

## II.    JURISDICTION

1.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345 and 42 U.S.C. §§ 9607 and 9613(b) and also has personal jurisdiction over Defendants. Solely for the purposes of this Consent Decree and the underlying complaint, Defendants waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District. Defendants shall not challenge entry or the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III.    PARTIES BOUND

2.    This Consent Decree is binding upon the United States and upon Defendants and their successors and assigns. Any change in ownership or corporate or other legal status, including but not limited to, any transfer of assets or real or personal property, shall in no way alter the status or responsibilities of Defendants under this Consent Decree.

## IV.    DEFINITIONS

3.    Unless otherwise expressly provided in this Consent Decree, terms used in this Consent Decree that are defined in CERCLA or in regulations promulgated under CERCLA shall have the meanings assigned to them in CERCLA or in such regulations. Whenever terms listed below are used in this Consent Decree or its appendices, the following definitions shall apply:

"Affiliated Contractors" shall mean any business entity that serves as a subcontractor to a Settling Private Party on any of Settling Private Parties' Federal Contracts, or as a prime contractor for Federal Contracts under which a Settling Private Party serves as a subcontractor.

"AUS OU" shall mean the Additional and Uncharacterized Sites Operable Unit located within the Site, and depicted generally on the map attached as Appendix A.

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act, as amended, 42 U.S.C. §§ 9601-9675.

"CHF" shall mean the Central Hazardous Materials Fund, i.e., the fund established by Public Law 103-332 (September 30, 1994) for costs incurred by DOI and its component Offices and Bureaus in responding, pursuant to CERCLA, to the presence of hazardous substances on public lands managed by DOI.

"Consent Decree" shall mean this Consent Decree and all appendices attached hereto. In the event of conflict between this Consent Decree and any appendix, the Consent Decree shall control.

"Crab Orchard National Wildlife Refuge NPL Site Special Account" shall mean the special account, within the EPA Hazardous Substance Superfund, established for the Site by EPA pursuant to Section 122(b)(3) of CERCLA, 42 U.S.C. § 9622(b)(3).

"Date of Expenditure" shall mean the date on which GD-OTS paid a GD-OTS' Response Cost.

"Day" or "day" shall mean a calendar day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next day that is not a Saturday, Sunday, or federal holiday.

"Defendants" shall mean the Settling Private Parties and the IOP Era Private Parties.

"DoD" shall mean the United States Department of Defense, as described in 10 U.S.C. § 111.

"DOI" shall mean the United States Department of the Interior, its component Offices and Bureaus, and its successor departments, agencies, or instrumentalities.

"DOJ" shall mean the United States Department of Justice and its successor departments, agencies, or instrumentalities.

"Double Recovery" shall mean (1) any Third-Party Reimbursement of any of the money being paid by the United States pursuant to this Consent Decree, and/or (2) any compensation of any kind for GD-OTS' Response Costs that are paid by the United States to a Settling Private Party or Affiliated Contractors, including, but not limited to, direct payments, Federal Contract payments or credits, and the compromise of any claims, causes of action, suits, or demands of any kind whatsoever in law or in equity for GD-OTS' Response Costs, whether asserted against the United States or other persons or entities, but not including money being paid pursuant to this Consent Decree.

"Effective Date" shall mean the date upon which the approval of this Consent Decree is recorded on the Court's docket.

"EPA" shall mean the United States Environmental Protection Agency.

"EPA Hazardous Substance Superfund" shall mean the Hazardous Substance Superfund established by the Internal Revenue Code, 26 U.S.C. § 9507.

"Federal Contract" means any prime contract, subcontract, or any other agreement transferring value between a Settling Private Party and any department, agency, or instrumentality of the United States, including but not limited to, contracts for goods or services, grants, and cooperative agreements. The term "Federal Contract" does not include this Consent Decree.

"FFA" shall mean the Federal Facilities Agreement entered into by DOI, EPA, the Department of the Army, and IEPA, pursuant to CERCLA Section 120, 42 U.S.C. § 9620, entitled *In the Matter of: The U.S. Department of the Interior's Crab Orchard National*

*Wildlife Refuge, Federal Facility Agreement Under CERCLA Section 120* and fully signed as of September 10, 1991.

"FWS" shall mean the United States Fish and Wildlife Service and its successor departments, agencies, or instrumentalities.

"GD-OTS' Response Costs" shall mean all costs incurred or to be incurred by or on behalf of GD-OTS in implementing the AOC that are consistent with the National Contingency Plan, plus accrued Interest on all such costs as provided in Paragraph 8. Internal expenses (including internal overhead or internal indirect charges) are not considered GD-OTS' Response Costs, nor are stipulated penalties or costs assessed pursuant to Paragraph 9 or Paragraph 10.

"Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year. Rates are available online at https://www.epa.gov/superfund/superfund-interest-rates.

"IOP" shall mean the former Illinois Ordnance Plant.

"IOP Era Private Parties" shall mean Sherwin Williams and Mason & Hanger.

"Mason & Hanger" includes the Mason & Hanger Corporation (formerly known as the Silas Mason Company and Mason & Hanger-Silas Mason Co, Inc.), The Mason & Hanger Group Inc., The Mason Company, American Ordnance LLC, Day & Zimmermann, Inc., and The Day & Zimmermann Group, Inc.

"MOA" shall mean the memorandum of agreement entitled *United States Department of the Interior and United States Department of the Army Memorandum of Agreement for Crab Orchard National Wildlife Refuge* and fully signed as of August 1, 1991.

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"Noticed Entities" shall mean entities to whom GD-OTS has sent a notice or a demand letter regarding GD-OTS' Response Costs. Noticed Entities are listed in Appendix B.

"Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper- or lower-case letter.

"Parties" shall mean the United States and Defendants.

"Refuge" shall mean the Crab Orchard National Wildlife Refuge, near Marion, Illinois, and depicted generally on the map attached as Appendix A.

"RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901-6992 (also known as the Resource Conservation and Recovery Act).

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Settling Federal Agencies" shall mean DOI acting by and through FWS; DoD acting by and through the Department of the Army; DOJ acting by and through the Federal Bureau of Prisons; the General Services Administration; and their successor departments, agencies, or instrumentalities.

"Settling Private Parties" shall mean Crane Company, as agent for Redco Corporation (formerly known as Crane Co.) ("Crane"), The Ensign-Bickford Company ("EBCo."), General Dynamics–Ordnance and Tactical Systems, Inc ("GD-OTS"), Illinois Tool Works Inc. ("ITW"), Olin Corporation ("Olin"), and United States Surgical Corporation and Mallinckrodt US LLC (collectively, "U.S. Surgical").

"Sherwin Williams" shall mean The Sherwin Williams Company and the Sherwin Williams Defense Corporation.

"Site" shall mean the Sangamo Electric Dump/Crab Orchard National Wildlife Refuge Site, located within the Refuge. The Site is encompassed within the historic boundaries of the former Illinois Ordnance Plant, as generally shown on the map included in Appendix A.

"Third-Party Reimbursement" shall mean any payment of, or consideration for, GD-OTS' Response Costs that a Settling Private Party or an Affiliated Contractor receives from any person or entity other than the United States, any Settling Private Party, or any Noticed Entities. Third Party Reimbursement includes but is not limited to direct payments, insurance or contract recoveries, the discharge of any debt or obligation, or the satisfaction of any claims, causes of action, suits, or demands of any kind whatsoever in law or in equity.

"United States" shall mean the United States of America and each department, agency, and instrumentality of the United States, including EPA and Settling Federal Agencies.

"United States Response Costs" shall mean all costs, including but not limited to direct and indirect costs, that EPA, DOI, or DOJ on behalf of EPA or DOI, has paid at or in connection with the AUS OU through December 26, 2002, that are not inconsistent with the National Contingency Plan, plus accrued Interest on all such costs through such date.

## V.    PAYMENT OF RESPONSE COSTS

4.    **Payment by Settling Private Parties for United States Response Costs**. Within 30 days after the Effective Date, Settling Private Parties shall pay to DOI $3,124,195.88, plus an additional sum for Interest on that amount calculated from October 5, 2015, through the date of payment. Within 30 days after the Effective Date, Settling

Private Parties shall pay to EPA $53,706.12, plus an additional sum for Interest on that amount calculated from November 5, 2015, through the date of payment.

5. Settling Private Parties shall make payment at https://www.pay.gov or otherwise in accordance with instructions provided to Settling Private Parties by the Financial Litigation Unit ("FLU") of the U.S. Attorney's Office for the Southern District of Illinois after the Effective Date. The payment instructions provided by the FLU will include a Consolidated Debt Collection System ("CDCS") number, Site/Spill ID Number 05P206, and DJ Numbers 90-11-6-19211 and 90-11-3-643/17, which shall be used to identify all payments required to be made in accordance with Paragraph 4 of this Consent Decree. The FLU will provide the payment instructions to:

> Janete Cheng
> J.P. Morgan
> 575 Washington Blvd, Floor 18
> Jersey City, NJ, 07310-1616
> (551) 205-1004
> janete.cheng@jpmorgan.com
>
> and
>
> Mary Rose Alexander
> Dylan Glenn
> Latham & Watkins LLP
> 330 North Wabash Ave., Suite 2800
> Chicago, IL 60611
> mary.rose.alexander@lw.com
> dylan.glenn@lw.com

on behalf of Settling Private Parties. Settling Private Parties may change the individual to receive payment instructions on their behalf by providing written notice of such change to DOJ, DOI, and EPA in accordance with Section XIV (Notices and Submissions).

6. **Deposit of Payment**.

    a. The total amounts to be paid to EPA pursuant to Paragraph 4 and Paragraph 8.a shall be deposited by EPA in the Crab Orchard National Wildlife Refuge NPL Site Special Account to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

    b. The total amounts to be paid to DOI pursuant to Paragraph 4 and Paragraph 8.a shall be deposited by DOI in the CHF.

7. **Notice of Payment**. At the time of payment, Settling Private Parties shall send to DOI, EPA, and DOJ, in accordance with Section XIV (Notices and Submissions), a notice of this payment including references to the CDCS Number, Site/Spill ID Number 05P206, and DJ Numbers 90-11-6-19211 and 90-11-3-643/17.

8.    **Payments by Settling Federal Agencies**.

a.    As soon as reasonably practicable after the Effective Date, the United States, on behalf of the Settling Federal Agencies and the IOP Era Private Parties, shall pay $2,883,873.12 to DOI and $49,574.88 to EPA.

b.    Subject to and conditioned upon the Settling Private Parties Covenant Against Double Recovery in Paragraph 22, as soon as reasonably practicable after the Effective Date, the United States, on behalf of the Settling Federal Agencies and the IOP Era Private Parties, shall:

(1)    For GD-OTS' Response Costs paid as of June 30, 2015, pay to GD-OTS

(a)    $18,081,936.40, which represents 48% of GD-OTS' Response Costs paid as of June 30, 2015, plus

(b)    an additional sum for Interest on that amount calculated from September 16, 2009 or the Date of Expenditure, whichever is later, through the Effective Date.

(2)    For GD-OTS' Response Costs paid after June 30, 2015, but before July 31, 2023, pay to GD-OTS

(a)    $6,244,647.71, which represents 48% of GD-OTS' Response Costs paid after June 30, 2015, but before July 31, 2023, plus

(b)    an additional sum for Interest on that amount calculated from the Date of Expenditure through the Effective Date.

(3)    For GD-OTS' Response Costs paid on or after August 1, 2023, the following procedure shall apply.

(a)    GD-OTS shall, not more than once per year, make a written request for reimbursement and, to the extent not already provided to Settling Federal Agencies, shall submit the following documentation: (i) summaries of costs without Interest by payee and year; (ii) summaries of costs without Interest reimbursed to the United States or the State of Illinois pursuant to the AOC; (iii) proof that said costs have been incurred and paid; (v) proof of GD-OTS' compliance with Paragraph 22 (Settling Private Parties Covenant

8

Against Double Recovery); and (v) such other information as may be necessary to demonstrate that these costs constitute GD-OTS' Response Costs.

(b)    If the Settling Federal Agencies believe that GD-OTS has made an accounting error, or that a cost item is included that represents costs which are inconsistent with or not incurred in implementing the AOC, or that the written request for reimbursement does not meet the requirements of Paragraph 8.b(3)(a), Settling Federal Agencies shall notify GD-OTS of such dispute(s) within 120 days after receipt of the request submitted pursuant to Paragraph 8.b(3)(a).

(c)    The United States may withhold payment of any disputed amount identified pursuant to Paragraph 8.b(3)(b), and GD-OTS may initiate dispute resolution in accordance with Section VII if GD-OTS believes such withholding is inconsistent with this Consent Decree.

(d)    The United States on behalf of the Settling Federal Agencies and the IOP Era Private Parties shall pay to GD-OTS 48% of the undisputed amount of the request submitted pursuant to Paragraph 8.b(3)(a), plus an additional sum for Interest calculated from the Date of Expenditure through the date of GD-OTS' request for reimbursement.

(e)    The United States on behalf of the Settling Federal Agencies and the IOP Era Private Parties shall pay to GD-OTS 48% of any disputed amount found to be due and owing after completion of the Dispute Resolution process in Section VII, plus an additional sum for Interest calculated from the Date of Expenditure through the date of GD-OTS' request for reimbursement.

c.    Payments to GD-OTS pursuant to Paragraph 8.b shall be made by Automated Clearinghouse (ACH) Electronic Funds Transfer. GD-OTS shall provide specific payment instructions within 10 days after the Effective Date. Such instructions shall include:

(1)    Payee's Account Name

(2)    Payee's 9-digit Automated Clearing House Routing Number

(3)    Payee's Account Number

9

(4)     Payee's Account Type (checking or savings)

(5)     Financial Institution Name

(6)     Financial Institution City & State

(7)     Payee's Tax ID Number

d.     In the event that the payment required by Paragraph 8.a or by Paragraph 8.b(1) or 8.b(2) is not made within 60 days after the Effective Date, the United States, on behalf of the Settling Federal Agencies and the IOP Era Private Parties, shall pay Interest on the unpaid balance, with such Interest commencing on the 61st day after the Effective Date and accruing through the date of the payment. In the event that payment of any undisputed amount of a request submitted pursuant to Paragraph 8.b(3) is not made within 120 days after the Settling Federal Agencies' receipt of a written request for reimbursement, the United States, on behalf of the Settling Federal Agencies and the IOP Era Private Parties, shall pay Interest on the unpaid balance, with such Interest commencing on the 121st day after the date of receipt of the written request for reimbursement and accruing through the date of the payment. In the event that payment of any disputed amount of a request submitted pursuant Paragraph 8.b(3) that is found to be due and owing after completion of the Dispute Resolution process in Section VII is not made within 120 days after completion of the Dispute Resolution process, the United States, on behalf of the Settling Federal Agencies and the IOP Era Private Parties, shall pay Interest on the unpaid balance, with such Interest commencing on the 121st day after completion of the Dispute Resolution process and accruing through the date of the payment, except that Interest shall not accrue and shall not be owed on any amount found not to be due and owing after completion of the Dispute Resolution process in Section VII.

e.     The Parties to this Consent Decree recognize and acknowledge that the payment obligations of the United States on behalf of the Settling Federal Agencies and the IOP Era Private Parties under this Consent Decree can only be paid from appropriated funds legally available for such purpose. Nothing in this Consent Decree shall be interpreted or construed as a commitment or requirement that the United States or any Settling Federal Agency obligate or pay funds in contravention of the Anti-Deficiency Act, 31 U.S.C.

§ 1341, or any other applicable provision of law.

## VI.    FAILURE TO COMPLY WITH CONSENT DECREE

9.    **Stipulated Penalty**

a.     If any amounts due to DOI or to EPA under Paragraph 4 (Payment by Settling Private Parties for United States Response Costs) are not paid by the required date, Settling Private Parties shall be in violation of this Consent Decree and shall pay to DOI or to EPA, as a stipulated penalty, in addition to the Interest required by Paragraph 4, $1,000 per violation per day that such payment is late.

b.     Stipulated penalties are due and payable within 30 days after the date of the demand for payment of the penalties by DOI or EPA. Settling Private Parties shall

10

make all payments at https://www.pay.gov in accordance with the procedures under Paragraph 5 and send notice of this payment in accordance with Paragraph 7 (Notice of Payment). Settling Private Parties shall indicate in the comment field on the https://www.pay.gov payment form that the payment is for stipulated penalties.

        c.     Penalties shall accrue as provided in this Paragraph regardless of whether DOI or EPA has notified Settling Private Parties of the violation or made a demand for payment but need only be paid upon demand. All penalties shall begin to accrue on the day after payment is due and shall continue to accrue through the date of payment. Nothing in this Consent Decree shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

        10.     If the United States brings an action to enforce this Consent Decree and the United States is successful, Settling Private Parties shall reimburse the United States for all costs of such action, including but not limited to costs of attorney time.

        11.     Payments made under this Section shall be in addition to any other remedies or sanctions available to the United States by virtue of Settling Private Parties' failure to comply with the requirements of this Consent Decree.

        12.     The obligations of Settling Private Parties to pay amounts owed the United States under this Consent Decree are joint and several. In the event of the insolvency of any of the Settling Private Parties or the failure by any of the Settling Private Parties to make the payments required under this Consent Decree, the remaining Settling Private Parties shall be responsible for such payments.

        13.     Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive payment of any portion of the stipulated penalties that have accrued pursuant to this Consent Decree. Payment of stipulated penalties shall not excuse Settling Private Parties from payment as required by Section V (Payment of Response Costs) or from performance of any other requirements of this Consent Decree.

## VII.    DISPUTE RESOLUTION

        14.     Any dispute arising under this Consent Decree shall in the first instance be the subject of informal negotiations between the United States and Settling Private Parties. During informal negotiations, the Parties shall in good faith exchange all relevant evidence reasonably necessary to support each Party's position. The period for informal negotiations shall last sixty (60) days from the initiation of the dispute resolution procedures unless this period is extended by written agreement of the disputing Parties. If the disputing Parties have not reached a resolution of the dispute by the end of the period for informal negotiations, either Party to the dispute may notify the Court of the dispute and the need for a judicial resolution.

## VIII.    COVENANTS BY UNITED STATES

        15.     **Covenants for Settling Private Parties by United States**. Except as specifically provided in Section 17.c (Reservation of Rights by United States), the United States covenants not to sue or to take administrative action against Settling Private Parties

11

pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), to recover United States Response Costs. These covenants shall take effect upon the Effective Date. These covenants are conditioned upon the satisfactory performance by Settling Private Parties of their obligations under this Consent Decree. These covenants extend only to Settling Private Parties and do not extend to any other person.

16.    **United States Agreement to Provide a Credit in the Event of a Recovery in the Mallinckrodt Bankruptcy**. In the event that the United States receives a recovery on its Proof of Claim 48723 regarding the AUS OU in the bankruptcy proceedings styled In re Mallinckrodt plc, No. 20-12522 (JTD) (Bankr. D. Del.) ("Mallinckrodt Payment"), consistent with the order and settlement agreement entered in Case No. 20-12522, Dkt. No. 9077, and Case No. 23-11258, Dkt. No. 948, the United States shall:

a.    Provide notice of any recovery amount to the Settling Private Parties within a reasonable time after the United States receives the distribution, but only for a period of seven years after the Effective Date of this Decree.

b.    Account for the recovery, regardless of when the United States receives the distribution, as follows:

(1)    Ten percent (10%) of each Mallinckrodt Payment received by DOI and EPA shall be credited against, and deducted from the next cost package to be submitted by them to GD-OTS pursuant to the 2002 AUS OU AOC; provided, however, the total amount of any and all such credits shall not exceed $611,135;

(2)    The portion of each Mallinckrodt Payment that is not credited as set forth in the preceding subparagraph shall be credited against and deducted from any AUS OU RD/RA costs sought by DOI or EPA.

17.    **Covenants for Settling Federal Agencies and IOP Era Private Parties by DOI and EPA**.

a.    Except as specifically provided in Section c (Reservation of Rights by United States), DOI and EPA covenant not to take administrative action against Settling Federal Agencies pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), to recover United States Response Costs. This covenant extends only to Settling Federal Agencies and does not extend to any other person.

b.    Except as specifically provided in Section c (Reservation of Rights by United States), DOI and EPA covenant not to sue or take administrative action against IOP Era Private Parties pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), to recover United States Response Costs. This covenant extends only to IOP Era Private Parties and does not extend to any other person.

c.    The covenants provided in this Paragraph shall take effect upon the Effective Date and are conditioned upon the satisfactory performance of the obligations of the United States on behalf of the Settling Federal Agencies and the IOP Era Private Parties under this Consent Decree.

## IX.     RESERVATIONS OF RIGHTS BY UNITED STATES

18.     The United States reserves, and this Consent Decree is without prejudice to, all rights against Settling Private Parties with respect to all matters not expressly included within Paragraph 15 (Covenants for Settling Private Parties by United States). Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, all rights against Settling Private Parties with respect to:

       a.     liability for failure of Settling Private Parties to meet a requirement of this Consent Decree;

       b.     liability for costs incurred or to be incurred by the United States that are not within the definition of United States Response Costs;

       c.     liability for injunctive relief or administrative order enforcement under Section 106 of CERCLA, 42 U.S.C. § 9606;

       d.     criminal liability; and

       e.     liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments.

19.     DOI, EPA, and the federal natural resource trustees reserve, and this Consent Decree is without prejudice to, all rights against Settling Federal Agencies and IOP Era Private Parties with respect to all matters not expressly included within Paragraph 17 (Covenants for Settling Federal Agencies and IOP Era Private Parties by DOI and EPA). Notwithstanding any other provision of this Consent Decree, DOI and EPA and the federal natural resource trustees reserve, and this Consent Decree is without prejudice to, all rights against Settling Federal Agencies and IOP Era Private Parties with respect to:

       a.     liability for failure of the United States on behalf of the Settling Federal Agencies and the IOP Private Parties to meet a requirement of this Consent Decree;

       b.     to the extent consistent with the FFA, liability for costs incurred or to be incurred by the United States that are not within the definition of United States Response Costs;

       c.     to the extent consistent with the FFA and the MOA, liability for injunctive relief or administrative order enforcement under Section 106 of CERCLA, 42 U.S.C. § 9606;

       d.     criminal liability; and

       e.     liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments.

## X.     COVENANTS BY SETTLING PRIVATE PARTIES, SETTLING FEDERAL AGENCIES, AND IOP ERA PRIVATE PARTIES

20.     **Covenants by Settling Private Parties**. Except as specifically provided in Section XI (Reservation of Rights by Settling Private Parties), Settling Private Parties covenant not to sue and agree not to assert any claims or causes of action against the United States, or its contractors or employees, or the IOP Era Private Parties, with respect to United States Response Costs and GD-OTS' Response Costs and this Consent Decree, including but not limited to:

      a.     any direct or indirect claim for reimbursement from the EPA Hazardous Substance Superfund based on Sections 106(b)(2), 107, 111, 112, or 113 of CERCLA, 42 U.S.C. §§ 9606(b)(2), 9607, 9611, 9612, or 9613, or any other provision of law;

      b.     any claim arising out of the response actions at the Site for which the United States Response Costs or GD-OTS' Response Costs were incurred, including any claim under the United States Constitution, the Constitution of the State of Illinois, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, or at common law; or

      c.     any claim pursuant to Section 107 or 113 of CERCLA, 42 U.S.C. § 9607 or 9613, Section 7002(a) of RCRA, 42 U.S.C. § 6972(a), or state law for United States Response Costs or GD-OTS' Response Costs.

21.     **Covenants by Settling Federal Agencies and IOP Era Private Parties**.

      a.     Settling Federal Agencies and IOP Era Private Parties agree not to assert any direct or indirect claim for reimbursement from the EPA Hazardous Substance Superfund through CERCLA §§ 106(b)(2), 107, 111, 112, 113 or any other provision of law with respect to United States Response Costs, GD-OTS' Response Costs, and this Consent Decree. This covenant does not preclude demand for reimbursement from the Superfund of costs incurred by a Settling Federal Agency in the performance of its duties (other than pursuant to this Consent Decree) as lead or support agency under the NCP.

      b.     IOP Era Private Parties agree not to assert any claims against the United States or Settling Private Parties for United States Response Costs or GD-OTS' Response Costs, under any theory of law or any contract, or in any forum.

      c.     This covenant is not intended to impact any contractual claims the IOP Era Private Parties may have against the United States pursuant to their contracts, except as provided in Paragraph 21b.

22.     **Settling Private Parties Covenant Against Double Recovery**.

      a.     For purposes of this Paragraph 22, Settling Private Parties shall include any parent company or companies.

14

b.      Based upon its knowledge and belief and subject to the penalties of the False Claims Act, 31 U.S.C. § 3729 et seq., and other applicable law, each Settling Private Party hereby warrants that it has neither sought nor received, and shall not in the future seek or receive, any Double Recovery.

c.      Settling Private Parties have not and shall not include in any claim, contract charge, reimbursement request, or invoice to the United States any costs that are response costs incurred or to be incurred in connection with any release or threatened release of hazardous substances or any discharge of oil at or from the AUS OU for which it has received payment either under this Consent Decree or through Third-Party Reimbursement, whether such a claim or invoice is submitted pursuant to any Federal Contract, or any claim, cause of action, suit, or demand of any kind whatsoever in law or in equity. All such costs, whether direct or indirect, shall be deemed to be "mutually agreed to be unallowable" costs subject to Federal Acquisition Regulation ("FAR") 31.201-6, Accounting for Unallowable Costs, and Cost Accounting Standard ("CAS") 405 (including any subsequent amendments or modifications to FAR 31.201-6 and CAS 405) and thus excluded from any billing, claim, or proposal applicable to any Federal Contracts, including, but not limited to, any final billing, final contract cost proposal, or final overhead rate proposal.

d.      Settling Private Parties shall neither claim nor receive reimbursement for response costs arising from any release or threatened release of hazardous substances or any discharge of oil at or from the AUS OU, regardless of the date of such releases or discharges, pursuant to any indemnification, hold-harmless, or other provision in any Federal Contract.

e.      In the event that a Settling Private Party enters into a Federal Contract, the Settling Private Party shall comply with CAS 405 (including any subsequent amendments or modifications thereto) when accounting for unallowable costs in any billing, claim, or proposal applicable to any Federal Contract. CAS 405 shall apply even if the Settling Private Party is not otherwise subject to CAS.

f.      In the event that a Settling Private Party or an Affiliated Contractor has prior to the Effective Date entered into or does after the Effective Date enters into a Federal Contract, any costs rendered unallowable under the terms of this Consent Decree, if included by the Settling Private Party in any billing, claim or proposal applicable to any Federal Contract and not returned in accordance with Paragraph 22.h, shall be deemed to be costs that have been "determined to be unallowable" and therefore subject to penalties within the meaning of FAR 42.709-1, clause 52.242-3, and related provisions.

g.      In the event that a Settling Private Party or an Affiliated Contractor enters into a Federal Contract which could result in a Double Recovery, the Settling Private Party shall provide a complete copy of this Consent Decree to the administrative contracting officials of the United States with cognizance over the Federal Contract and to the responsible official or employee of the Settling Private Party with the responsibility for implementing the obligations or requirements of this Consent Decree.

h.     In the event that a Settling Private Party or an Affiliated Contractor receives a Double Recovery, within ninety (90) days after such receipt, the Settling Private Party shall repay the United States dollar-for-dollar in the amount of the Double Recovery. Such amount shall accrue interest as described in 26 U.S.C. §§ 6621 and 6622 from the date on which it was received. If a Double Recovery has been or is received from the United States pursuant to a Federal Contract, the Settling Private Party shall notify the cognizant Contracting Officer for that Federal Contract in writing within thirty (30) days after discovery of such receipt, and reimburse the United States by transmitting a sum equal to the amount of the Double Recovery in accordance with written instructions provided by the cognizant Contracting Officer.

23.     Nothing in this Consent Decree shall be deemed to constitute approval or preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

24.     **Waiver of Claims**

a.     **De Micromis Waiver**. Defendants agree not to assert any claims and to waive all claims or causes of action (including but not limited to claims or causes of action under Sections 107(a) and 113 of CERCLA) that they may have for all matters addressed as defined in Paragraph 28 against any person where the person's liability to Defendants is based solely on having arranged for disposal or treatment, or for transport for disposal or treatment, of hazardous substances at the Site, or having accepted for transport for disposal or treatment of hazardous substances at the Site, if all or part of the disposal, treatment, or transport occurred before April 1, 2001, and the total amount of material containing hazardous substances contributed by such person to the Site was less than 110 gallons of liquid materials or 200 pounds of solid materials;

b.     Exceptions to Waiver

(1)     The waiver under Paragraph 24.a shall not apply in any manner to any claims that have been or may be asserted by GD-OTS against other Settling Private Parties with regard to GD-OTS' Response Costs.

(2)     The waiver under Paragraph 24.a shall not apply with respect to any defense, claim, or cause of action that a Defendant may have against any person otherwise covered by such waivers if such person asserts a claim or cause of action relating to the Site against such Defendant.

(3)     The waiver under Paragraph 24.a shall not apply to any claim or cause of action against any person otherwise covered by such waiver if EPA or DOI determines that: (i) the materials containing hazardous substances contributed to the Site by such person contributed significantly or could contribute significantly, either individually or in the aggregate, to the cost of the response action or natural resource restoration at the Site; or (ii) such person has failed to comply with any information request or administrative subpoena issued pursuant to Section 104(e) or 122(e)(3)(B) of CERCLA, 42 U.S.C. § 9604(e) or 9622(e)(3)(B), or Section 3007 of RCRA,

42 U.S.C. § 6927, or has impeded or is impeding, through action or inaction, the performance of a response action or natural resource restoration with respect to the Site; or if (iii) such person has been convicted of a criminal violation for the conduct to which the waiver would apply and that conviction has not been vitiated on appeal or otherwise.

## XI.    RESERVATION OF RIGHTS BY SETTLING PRIVATE PARTIES

25.    The Settling Private Parties reserve, and this Consent Decree is without prejudice to, all rights against the United States, the Settling Federal Agencies, the IOP Era Private Parties, and against one another with respect to all matters not expressly included within Paragraph 20 (Covenants by Settling Private Parties), Paragraph 22 (Settling Private Parties' Covenant Against Double Recovery), or Paragraph 24 (Waiver of Claims) including, but not limited to, all rights to pursue costs associated with implementation of the RD/RA, if any. Notwithstanding any other provision of this Consent Decree, the Settling Private Parties reserve, and this Consent Decree is without prejudice to, all rights against the United States, the Settling Federal Agencies, and the IOP Era Private Parties with respect to liability for failure of United States, the Settling Federal Agencies, or the IOP Era Private Parties to meet a requirement of this Consent Decree.

26.    Nothing in this Consent Decree is intended to impair any Settling Private Party's right to pursue insurance coverage.

## XII.    EFFECT OF SETTLEMENT/CONTRIBUTION

27.    Except as provided in Paragraph 24 (Waiver of Claims), nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree. Except as provided in Section X (Covenants by Settling Private Parties, Settling Federal Agencies, and IOP Era Private Parties), each of the Parties expressly reserves any and all rights (including, but not limited to, pursuant to Section 113 of CERCLA, 42 U.S.C. § 9613), defenses, claims, demands, and causes of action that it may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto. Nothing in this Consent Decree diminishes the right of the United States, pursuant to Section 113(f)(2) and (3) of CERCLA, 42 U.S.C. § 9613(f)(2)-(3), to pursue any such persons to obtain additional response costs or response action and to enter into settlements that give rise to contribution protection pursuant to Section 113(f)(2).

28.    The Parties agree, and by entering this Consent Decree this Court finds, that this Consent Decree constitutes a judicially-approved settlement pursuant to which each Settling Private Party, each Settling Federal Agency, and each IOP Era Private Party has, as of the Effective Date, resolved liability to the United States within the meaning of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and is entitled, as of the Effective Date, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, or as may be otherwise provided by law, for the "matters addressed" in this Consent Decree. The "matters addressed" in this Consent Decree are United States Response Costs and GD-OTS' Response Costs.

17

29.     The Parties further agree, and by entering this Consent Decree this Court finds, that the complaint filed by the United States in this action is a civil action within the meaning of Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), and that this Consent Decree constitutes a judicially-approved settlement pursuant to which each Settling Private Party, each Settling Federal Agency, and each IOP Era Private Party has, as of the Effective Date, resolved liability to the United States within the meaning of Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B).

30.     Each Defendant shall, with respect to any suit or claim brought by it for matters related to this Consent Decree, notify DOI, EPA, and DOJ in writing no later than 60 days prior to the initiation of such suit or claim. Each Defendant also shall, with respect to any suit or claim brought against it for matters related to this Consent Decree, notify DOI, EPA, and DOJ in writing within 10 days after service of the complaint or claim upon it. In addition, each Defendant shall notify DOI, EPA, and DOJ within 10 days after service or receipt of any Motion for Summary Judgment, and within 10 days after receipt of any order from a court setting a case for trial, for matters related to this Consent Decree.

31.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, recovery of response costs, or other relief relating to the Site, Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the Covenants set forth in Section VIII.

## XIII.   RETENTION OF RECORDS

32.     Until 10 years after either the Effective Date or a certificate of completion of the final remedy for the AUS OU, whichever is later, each Defendant shall preserve and retain all non-identical copies of records, reports, documents, and other information (including records, reports, documents, and other information in electronic form) (hereinafter referred to as "Records") now in its possession or control or that come into its possession or control, that relate in any manner to its liability under CERCLA with respect to the Site, provided, however, that Defendants who are potentially liable as owners or operators of the Site must retain, in addition, all Records that relate to the liability of any other person under CERCLA with respect to the Site. Each of the above record retention requirements shall apply regardless of any corporate retention policy to the contrary.

33.     At the conclusion of the record retention period, Defendants shall notify DOI, EPA, and DOJ at least 180 days prior to the destruction of any such Records, and, upon request by DOI, EPA, or DOJ, and except as provided in Paragraph 34 (Privileged and Protected Claims), Defendants shall deliver any such Records to DOI or EPA.

34.    **Privileged and Protected Claims**

a.    Any Defendant may assert that all or part of a Record is privileged or protected as provided under federal law, provided they comply with Paragraph 34.b, and except as provided in Paragraph 34.c.

b.    If any Defendant asserts a claim of privilege or protection, they shall provide DOI, EPA, and DOJ with the following information regarding such Record: its title; its date; the name, title, affiliation (e.g., company or firm), and address of the author, each addressee, and of each recipient; a description of the Record's contents; and the privilege or protection asserted. If a claim of privilege or protection applies only to a portion of a Record, the Defendant shall provide the Record to DOI, EPA, and DOJ in redacted form to mask the privileged or protected information only. The Defendant shall retain all Records that it claims to be privileged or protected until the United States has had a reasonable opportunity to dispute the privilege or protection claim and any such dispute has been resolved in the Defendant's favor.

c.    Defendants may make no claim of privilege or protection regarding:

(1)    any data regarding the Site, including but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, radiological, or engineering data, or the portion of any other Record that evidences conditions at or around the Site; or

(2)    the portion of any Record that Defendants are required to create or generate pursuant to this Consent Decree.

35.    **Business Confidential Claims**. A Defendant may assert that all or part of a Record submitted to DOI, EPA, and DOJ under this Section is business confidential to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. 2.203(b). The Defendant shall segregate and clearly identify all Records or parts thereof submitted under this Consent Decree for which the Defendant asserts a business confidentiality claim. Records that the Defendant claims to be confidential business information will be accorded the protection specified in 40 C.F.R. Part 2, Subpart B. If no claim of confidentiality accompanies Records when they are submitted to DOI, EPA, and DOJ, or if DOI, EPA, and DOJ have notified the Defendant that the Records are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2 Subpart B, the public may be given access to such Records without further notice to the Defendant.

36.    Each Defendant certifies individually that, to the best of its knowledge and belief, after thorough inquiry, it has not altered, mutilated, discarded, destroyed or otherwise disposed of any Records (other than identical copies) relating to its potential liability regarding the Site since notification of potential liability by DOI, EPA, or the State of Illinois and that it has fully complied with any and all DOI, EPA, and State of Illinois requests for information regarding the Site pursuant to Sections 104(e) and 122(e)(3)(B) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e)(3)(B), Section 3007 of RCRA, 42 U.S.C. § 6927, and state law.

19

37.     The United States acknowledges that each Settling Federal Agency (1) is subject to all applicable Federal record retention laws, regulations, and policies; and (2) has certified that it has fully complied with any and all DOI, EPA and State requests for information regarding the Site pursuant to Sections 104(e) and 122(e)(3)(B) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e) (3)(B), Section 3007 of RCRA, 42 U.S.C. § 6927, and state law.

## XIV.   NOTICES AND SUBMISSIONS

38.     Whenever, under the terms of this Consent Decree, notice is required to be given or a document is required to be sent by one party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing. Except as otherwise provided, notice to a Party by email (if that option is provided below) or by regular mail in accordance with this Section satisfies any notice requirement of the Consent Decree regarding such Party.

**As to DOJ**:              Chief, Environmental Enforcement Section
                            Environment and Natural Resources Division
                            UNITED STATES DEPARTMENT OF JUSTICE
                            eescdcopy.enrd@usdoj.gov
                            Re: DJ # 90-11-3-643/17

**and**:                    Chief, Environmental Defense Section
                            Environment and Natural Resources Division
                            UNITED STATES DEPARTMENT OF JUSTICE
                            MailProcessing_EDS.ENRD@usdoj.gov
                            Re: DJ # 90-11-6-19211

**As to EPA**:              Viral Patel
                            Remedial Project Manager
                            U.S. EPA Region 5
                            Mail Code SR-J
                            77 West Jackson Blvd.
                            Chicago, IL 60604-3507
                            patel.viral@epa.gov

**and**:                    Matthew Russo
                            Associate Regional Counsel
                            U.S. EPA Region 5
                            Mail Code C-14J
                            77 West Jackson Blvd.
                            Chicago, IL 60604-3507
                            russo.matthew@epa.gov

**As to DOI:**              Charles M. Crout
                            U.S. Department of the Interior
                            Office of the Solicitor
                            Division of Land Resources
                            Environmental Compliance and Response Branch
                            1849 C Street NW, MS-6045
                            Washington, D.C. 20240
                            charles.crout@sol.doi.gov

**and:**                    Timothy L. Rodeffer
                            Project Leader – Environmental Remediation and Restoration
                            Project
                            Crab Orchard National Wildlife Refuge
                            timothy_rodeffer@fws.gov

**and:**                    Cynthia Ries, CHF Program Manager
                            Office of Environmental Policy & Compliance
                            1849 C Street NW
                            Washington, D.C. 20240
                            cynthia_ries@ios.doi.gov

**As to EBCo.:**            John W. Watson
                            Baker & McKenzie LLP
                            300 East Randolph Street, Suite 5000
                            Chicago, IL 60601
                            john.watson@bakermckenzie.com

**As to GD-OTS:**           General Counsel
                            General Dynamics Ordnance and Tactical Systems
                            100 Carillon Parkway
                            Saint Petersburg, FL 33716
                            larry.lohman@gd-ots.com

**and:**                    Mary Rose Alexander
                            Dylan Glenn
                            Latham & Watkins LLP
                            330 North Wabash Ave., Suite 2800
                            Chicago, IL 60611
                            mary.rose.alexander@lw.com
                            dylan.glenn@lw.com

**As to ITW**:            John L. Hayes, Esq.
                          Associate General Counsel
                          Illinois Tool Works Inc.
                          155 Harlem Ave.,
                          Glenview, IL 60025
                          jhayes@itw.com

                          Andrew Dorn, PE
                          Manager, Global Environmental Programs
                          Illinois Tool Works Inc.
                          155 Harlem Avenue
                          Glenview, IL  60025
                          adorn@itw.com

**As to Olin**:           Michael Wetmore
                          POLSINELLI LLP
                          7676 Forsyth Blvd
                          Suite 800
                          St. Louis, Missouri 63105
                          mwetmore@polsinelli.com

**and:**                  Lisa Funderburg
                          Vice President & Chief EHS Counsel
                          190 Carondelet Plaza, Suite 1530
                          Clayton, MO 63105
                          Lafunderburg@olin.com

**and:**                  David Share
                          Vice President, Environmental Remediation
                          490 Stuart Road NE
                          Cleveland, TN 37312
                          dmshare@olin.com

**As to Crane**:          Crane Company, as agent for Redco Corporation
                          Attn: General Counsel
                          100 First Stamford Pl #300
                          Stamford, CT 06902
                          ADiorio@craneco.com

**and:**                  Paul K. Stockman
                          Kazmarek Mowrey Cloud Laseter LLP
                          1001 Liberty Avenue, Suite 500

Pittsburgh, PA 15222
pstockman@kmcllaw.com

**As to U.S. Surgical:**    Matthew Stennes
Vice President, Litigation & Investigations
710 Medtronic Pkwy
Minneapolis, MN 55432
matthew.l.stennes@medtronic.com

**and:**    Paul D. Wierenga
DLA Piper LLP
500 8th Street NW
Washington, DC 20004
paul.wierenga@us.dlapiper.com

**As to Sherwin Williams:**    Stephen J. Perisutti
Senior Vice President, Deputy General Counsel, and
Assistant Secretary
101 W. Prospect Ave.
Cleveland, Ohio 44115
sjperisutti@sherwin.com

**As to Mason & Hanger:**    Eric J. Schaal
General Counsel, Munitions & Government
Day & Zimmermann
1500 Spring Garden Street
Philadelphia, PA 19130
eric.schaal@dayzim.com

## XV.    RETENTION OF JURISDICTION

39.    This Court shall retain jurisdiction over this matter for the purpose of interpreting and enforcing the terms of this Consent Decree.

## XVI.    INTEGRATION/APPENDICES

40.    This Consent Decree and its appendices constitute the final, complete and exclusive agreement and understanding among the Parties with respect to the settlement embodied in this Consent Decree. The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree. The following appendices are attached to and incorporated into this Consent Decree:

23

"Appendix A" is the map of the Site.

"Appendix B" is the list of entities to whom GD-OTS has sent a notice or a demand letter regarding GD-OTS' Response Costs.

## XVII.  LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

41.     This Consent Decree shall be lodged with the Court for a period of at least 30 days for public notice and comment. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations that indicate that this Consent Decree is inappropriate, improper, or inadequate. Defendants consent to the entry of this Consent Decree without further notice.

42.     If for any reason this Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any Party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XVIII. SIGNATORIES/SERVICE

43.     Each undersigned representative of a Party certifies that he or she is authorized to enter into the terms and conditions of this Consent Decree and to execute and bind legally such Party to this document.

44.     Each Defendant agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree, unless the United States has notified Defendants in writing that it no longer supports entry of the Consent Decree.

45.     Each Defendant shall identify, on the attached signature page, the name and address of an agent who is authorized to accept service of process by mail on behalf of that Party with respect to all matters arising under or relating to this Consent Decree. Defendants hereby agree to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including but not limited to, service of a summons. The Parties agree that the Settling Private Parties, the Settling Federal Agencies, and the IOP Era Private Parties need not file an answer to the complaint in this action, or any crossclaims or counterclaims or answers thereto, unless or until the Court expressly declines to enter this Consent Decree.

## XIX.   FINAL JUDGMENT

46.     Upon entry of this Consent Decree by the Court, this Consent Decree shall constitute the final judgment between and among the United States and the Defendants. The Court enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

**IT IS SO ORDERED.**

**DATED: June 12, 2025**

**STACI M. YANDLE**
United States District Judge

24

Signature Page for Consent Decree Regarding Sangamo Electric Dump/Crab Orchard National Wildlife Refuge Site, Additional and Uncharacterized Sites Operable Unit

**FOR THE UNITED STATES OF AMERICA**:


TODD KIM
Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources
Division P.O. Box 7611
Washington, D.C. 20530


January 10, 2025
Dated

_____
KATHERINE A. ABEND
Senior Counsel
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611
Washington, D.C. 20044-7611

DANIEL R. DERTKE
Senior Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044-7611


RACHELLE AUD CROWE
United States Attorney
Southern District of Illinois


LAURA J. BARKE
Assistant United States Attorney
Southern District of Illinois
Nine Executive Drive
Fairview Heights, IL 62208-1344

Signature Page for Consent Decree Regarding Sangamo Electric Dump/Crab Orchard National Wildlife Refuge Site, Additional and Uncharacterized Sites Operable Unit

**FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:**

DOUGLAS BALLOTTI

Digitally signed by DOUGLAS BALLOTTI
Date: 2024.11.06 06:57:38 -06'00'

DOUGLAS BALLOTTI
Director
Superfund & Emergency Management Division
U.S. Environmental Protection Agency, Region 5
77 West Jackson Blvd.
Chicago, IL 60604-3507

MATTHEW RUSSO

Digitally signed by MATTHEW RUSSO
Date: 2024.11.07 11:34:41 -06'00'

MATTHEW RUSSO
Associate Regional Counsel
U.S. Environmental Protection Agency
Region 5
77 West Jackson Blvd.
Chicago, IL 60604-3507

Signature Page for Consent Decree Regarding Sangamo Electric Dump/Crab Orchard
National Wildlife Refuge Site, Additional and Uncharacterized Sites Operable Unit

**FOR THE UNITED STATES
DEPARTMENT OF THE INTERIOR**

AARON
MOODY

Digitally signed by
AARON MOODY
Date: 2024.11.20 10:54:31
-05'00'

_____
Dated

AARON MOODY
Associate Solicitor
U.S. Department of the Interior
Office of the Solicitor
Division of Land Resources
1849 C Street, N.W., MS6412
Washington, DC 20240

27

Signature Page for Consent Decree Regarding Sangamo Electric Dump/Crab Orchard National Wildlife Refuge Site, Additional and Uncharacterized Sites Operable Unit

**FOR GENERAL DYNAMICS–ORDNANCE AND TACTICAL SYSTEMS, INC.:**

Signed by:

*Firat Gezen*

5E6C472AB3C448D...

9/28/2024
_____
Dated

Name (print): Firat Gezen
Title: President
Address: 100 Carillon Parkway, Saint Petersburg, FL 33716

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name:     Larry Lohman
Title:     Senior VP and General Counsel
Address:  100 Carillon Parkway, Saint Petersburg, FL 33716
Phone:    (727) 578-8181
email:    larry.lohman@gd-ots.com

Signature Page for Consent Decree Regarding Sangamo Electric Dump/Crab Orchard National Wildlife Refuge Site, Additional and Uncharacterized Sites Operable Unit

**FOR CRANE COMPANY, as agent for REDCO CORPORATION:**

Dated September __19__, 2024

Name:       Anthony M. D'Iorio
Title:        Executive Vice President,
              General Counsel and Secretary
Address:    100 First Stamford Pl #300
              Stamford, CT 06902

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name:       Anthony M. D'Iorio
Title:        Executive Vice President,
              General Counsel and Secretary
Address:    100 First Stamford Pl #300
              Stamford, CT 06902
Phone:      206-363-7300
email:       adiorio@craneco.com

Signature Page for Consent Decree Regarding Sangamo Electric Dump/Crab Orchard National Wildlife Refuge Site, Additional and Uncharacterized Sites Operable Unit

**FOR THE ENSIGN-BICKFORD COMPANY:**

9/24/2024 | 10:47 AM MDT
_____
Dated

Name (print):  Matthew Lewis
Title:              President
Address:        999 17th Street, Suite 900
                      Denver, CO 80202

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name:        John Watson
Title:          Partner
Address:      Baker McKenzie LLP
                    300 East Randolph Street
                    Suite 5000
                    Chicago, Illinois  60601
Phone:        312-848-9474
email:          john.watson@bakermckenzie.com

Signature Page for Consent Decree Regarding Sangamo Electric Dump/Crab Orchard National
Wildlife Refuge Site, Additional and Uncharacterized Sites Operable Unit

FOR _____:

ILLINOIS TOOL WORKS INC.

(as successor by merger to Diagraph Corporation)

9/23/24
_____
Dated

Name (print):  _Todd Pankey
Title:             _VP, Strategic Sourcing & EHSS
Address:        _155 Harlem Ave.
                     _Glenview, IL 90025

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name:         _Andrew Dorn
Title:            _Environmental Manager
Address:      _155 Harlem Ave.
                    _Glenview, IL 90025
Phone:        _224-661-7625
email:          _adorn@itw.com

[**NOTE: A separate signature page must be signed by each Defendant**]

Signature Page for Consent Decree Regarding Sangamo Electric Dump/Crab Orchard National Wildlife Refuge Site, Additional and Uncharacterized Sites Operable Unit

**FOR OLIN CORPORATION:**

9/25/2024
Dated

Name (print): David M. Share
Title: VP, Environmental Remediation
Address: 490 Stuart Road, NE
Cleveland, TN 37312

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name: CT Corporation System
Title:
Address: 120 South Central Avenue
Clayton, MO 63105
Phone: 866-401-8252
email: LargeCorporationTeam@wolterskluwer.com

Signature Page for Consent Decree Regarding Sangamo Electric Dump/Crab Orchard National
Wildlife Refuge Site, Additional and Uncharacterized Sites Operable Unit

**FOR UNITED STATES SURGICAL CORPORATION
AND MALLINCKRODT US LLC:**

Dated: 9-24-2024

Patricia H. Duft
Vice President
710 Medtronic Parkway
Minneapolis, MN 55432

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Paul Wierenga
DLA Piper LLP
500 8th St NW
Washington, DC 20004
202-799-4401
paul.wierenga@us.dlapiper.com

[**NOTE: A separate signature page must be signed by each Defendant**]

Signature Page for Consent Decree Regarding Sangamo Electric Dump/Crab Orchard National Wildlife Refuge Site, Additional and Uncharacterized Sites Operable Unit

**FOR   The Sherwin-Williams Company**

Dated:  September 30, 2024

| | |
|---|---|
| Name (print): | Stephen J. Perisutti |
| Title: | Senior Vice President, Deputy General Counsel and Assistant Secretary |
| Address: | 101 W. Prospect Ave. |
| | Cleveland, OH  44115 |

Agent Authorized to Accept Service on Behalf of Above-signed Party:

| | |
|---|---|
| Name: | Jason Perdion |
| Title: | Vice President, Associate General Counsel |
| Address: | 101 W. Prospect Ave. |
| | Cleveland, OH  44115 |
| Phone: | 216-645-2183 |
| email: | jason.perdion@sherwin.com |

**[NOTE: A separate signature page must be signed by each Defendant]**

Signature Page for Consent Decree Regarding Sangamo Electric Dump/Crab Orchard National Wildlife Refuge Site, Additional and Uncharacterized Sites Operable Unit

**FOR** _____:

MASON & HANGER CORPORATION

25 September 2024

Dated

Name (print):  Eric J. Schaal

Title:  Assistant Secretary, Mason & Hanger Corporation

Address:  1500 Spring Garden Street

Philadelphia, PA 19130

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name:  Eric J. Schaal

Title:  Assistant Secretary, Mason & Hanger Corporation

Address:  1500 Spring Garden Street

Philadelphia, PA 19130

Phone:  215-299-8141

email:  eric.schaal@dayzim.com

**[NOTE:  A separate signature page must be signed by each Defendant]**



**Appendix A**

Crab Orchard
National Wildlife Refuge
Environmental
Land Use Control
Overview Map

February 2007

AUS OU
MISCA OU
Metals OU
PCB OU
EMMA OU
Water Tower OU
Detailed Reference Figure
Former Illinois Ordnance Plant
Crab Orchard National Wildlife Refuge

## Appendix B – Noticed Entities

The following entities, including their parent companies, subsidiaries, affiliates, successors, and assigns, are the Noticed Entities:

American Magnetics Corporation;

Austin Powder Company;

Crane Company, as agent for Redco Corporation;

CNA International, Inc.;

Diagraph Corporation;

Dooley Brothers, Inc.;

East Side Lumberyard Supply Co.;

E.I. DuPont de Nemours and Company;

Ensign-Bickford Industries, Inc.(a/k/a The Ensign Bickford Company);

Dyno Nobel Inc.;

Great Lakes Synergy Corporation;

Illinois Tool Works Inc.;

The Mason & Hanger Group Inc.;

Mallinckrodt, Inc. (a/k/a Mallinckrodt US Holdings LLC, Mallinckrodt plc);

Mallinckrodt US LLC;

Monsanto Company;

Olin Corporation;

Pennzoil-Quaker State Company

Schlumberger Limited (successor to Sagamo Weston Inc.);

The Sherwin-Williams Company; and

United States Surgical Corporation.